IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 4, 2021 Session

## STATE OF TENNESSEE v. ANNON SARA ALOQILI

**Appeal from the Circuit Court for Madison County**
**No. 19-608    Roy B. Morgan, Jr., Judge**

_____

### No. W2020-01219-CCA-R3-CD

_____

Defendant, Annon Sara Aloqili, pled guilty to aggravated burglary, theft up to $1,000, and misdemeanor evading arrest and was sentenced as a Range I offender to an effective sentence of six years on supervised probation. Following a hearing on a violation of probation warrant, the trial court found Defendant in violation of her suspended sentence, revoked the probation, and ordered her to serve the balance of the sentence in confinement. On appeal, Defendant claims the trial court abused its discretion in revoking her probation and ordering her to serve the original sentence in confinement. After hearing oral arguments and following a review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., JJ., joined.

Jeremy Brent Epperson (at revocation hearing), District Public Defender; Patrick S. Rader and Brennan M. Wingerter (on appeal), Assistant District Public Defender, for the appellant, Annon Sara Aloqili.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Lee R. Sparks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On November 15, 2019, Defendant pled guilty to aggravated burglary, theft up to $1,000, and misdemeanor evading arrest. She was sentenced as a Range I offender to six years for aggravated burglary, and eleven months, twenty-nine days for the two misdemeanor offenses. The trial court ran all counts concurrent with each other for a total effective sentence of six years to be served on supervised probation.

On June 11, 2020, the trial court issued a probation violation warrant against Defendant for violating two rules of probation based on Defendant's arrest for domestic violence on June 5, 2020:

- Rule #1: I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances.

- Rule #14: I will not engage in any assaultive, abusive, threatening or intimidating behavior.

On July 20, 2020, the trial court issued a second probation violation warrant against Defendant for violating Rule #1 and Rule #14 based upon Defendant's arrest and being charged with robbery on July 11, 2020. The robbery occurred at a Shell station and was captured on the store's two surveillance cameras. At the probation violation hearing on August 17, 2020, the State admitted the surveillance recordings as an exhibit during the testimony of its sole witness, investigating Officer Ashley McCullar of the Jackson Police Department. Officer McCullar testified while the pertinent surveillance recordings were played in court. The record does not indicate which video recording was played nor which portions of the recordings were used during his testimony. The recordings lacked audio.

Officer McCullar described the "suspect vehicle" as the black or gray Mitsubishi Eclipse and the "victim's vehicle" as the white van, both shown on the video. Officer McCullar explained that the two occupants of the van and the four occupants of the Eclipse became involved in some type of conflict, and that the primary suspect ripped the wallet from the female victim's hands. Officer McCullar then identified Defendant in the courtroom as a participant in the robbery and testified that Defendant was seen going through the wallet before she and the other occupants of the Eclipse drove away and left the scene.

On cross-examination, Officer McCullar confirmed that Defendant was not the "primary suspect" of the robbery but stated that in the video she "appears to be going through the wallet after the wallet is taken from the victim." Officer McCullar acknowledged that he could not make out what was discussed or what led the parties to the conflict because the surveillance recordings had no audio. On redirect examination, Officer McCullar maintained that Defendant was seen "go[ing] through" the victim's wallet after it was taken from the victim by one of the other occupants of the Eclipse.

At the close of the proof, defense counsel argued that the State had failed to prove the elements of robbery, specifically that the State did not show that "there was not consent to transfer or give" the victim's wallet or purse. When the trial court inquired about proof on the first violation of probation warrant based on Defendant's arrest for domestic violence, the State responded that it would withdraw its petition to revoke probation based on that arrest. The trial court then ruled that the State had met its burden of proof and found that Defendant had violated her probation based on the incident captured on the Shell station surveillance cameras:

> I'm looking at what the State's offered, no challenge to the credibility of the video or the sworn testimony of the investigator in this case. The video does show [Defendant]. She's been identified in the video as participating, having the wallet after it was taken, getting into the vehicle and leaving immediately with those individuals with the wallet. The Court finds the burden of proof has been carried as far as criminal activities taking place while she is on probation regarding the offense of robbery.

The State argued that Defendant's probation should be revoked, and added that Defendant had violated her probation once or twice previously and was reinstated to probation "in order to complete the Day Reporting Center[.]" The defense did not object to the State's claim regarding Defendant's prior criminal history or argue against revocation based on a previous failure to abide by the rules of probation.

The trial court revoked Defendant's probation and ordered her to serve her original sentence based on her "entire record" which showed that she had "prior opportunities to do things right" yet "continues to violate." Defendant filed a timely notice of appeal from the trial court's order.

In the record, there are eight recordings from two surveillance cameras at the Shell station. The recordings capturing the entire episode between the parties on July 11, 2020 from two different camera angles. There is no audio in any of the recordings.

As an overview of the scene, a white van is parked at pump 2. A blue, two-door Eclipse pulls up and parks at pump 1. A young man dressed in a blue, sleeveless sports jersey with gold or yellow trim and shorts ("blue jersey man"), steps out of the Eclipse and talks to an older woman dressed in a white sweatshirt and dark colored shorts who has stepped out of the driver seat of the white van ("female victim"). A second young man dressed in a blue shirt with a black face mask exits the Eclipse through the right passenger side ("blue shirt man"). The face mask is resting on his chin.[1] The passenger of the white van is an older man with a chain around his waist ("male victim"). He has stepped out of

---

[1]Blue shirt man was wearing a face mask used by the public to curtail the COVID-19 pandemic and not the kind of mask worn commonly to conceal a face during a crime.

the van and walks to the Eclipse and talks to the blue shirt man. The driver of the Eclipse ("the driver") appears to be taller than the other individuals involved and is wearing shorts and a white t-shirt with Tennessee written across the front. Defendant is wearing a green shirt and black jeans or pants.

As shown in the videos, Defendant was not the person who pulled the wallet from the victim. Contrary to Officer McCullar's testimony, Defendant is not seen on the video going through the wallet after it was taken. However, the video does show that Defendant exited the Eclipse three times at pivotal points during the episode to support her fellow passengers. She first exited the Eclipse when blue jersey man advanced on the shorter, older male victim in a threatening and intimidating manner. She, like the blue shirt man, and the driver in the white Tennessee t-shirt, followed blue jersey man toward and against the male victim. Their advancement on the male victim was stopped by the female victim who ran out of the convenience store just in time to separate the male victim from Defendant and her three fellow passengers and to quell the conflict.

Defendant exited the Eclipse a second time when blue jersey man assaulted the male victim by grabbing the male victim first by the shirt and later by both wrists on the left side of the victims' van. Defendant, like blue jersey man, jogged deliberately and purposefully in the direction of where blue shirt man was restraining the male victim. Unlike blue jersey man, Defendant moved on the two men and got close enough to both that she was able to pull or grab the right hand of blue shirt man thereby releasing the male victim. Defendant refers to this instance as evidence that she tried to defuse the situation. The female victim again successfully quelled the conflict. After talking to the female victim, blue shirt man, who had just assaulted the male victim, stopped and got back inside the Eclipse.

Defendant's third exit from the vehicle occurred when the man in the blue shirt wrestled the female victim's wallet away from her. Defendant immediately jumped out of the Eclipse to confront the female victim and deter her from retrieving her wallet. Defendant then got into the Eclipse and left with the other three individuals with the wallet.

**Analysis**

**Sufficiency of the Evidence Supporting Revocation**

Defendant claims the trial court abused its discretion in revoking her probation because there was no substantial evidence that she robbed the victims as the main suspect or under the theory of criminal responsibility. The State contends that the trial court properly exercised its discretion in revoking Defendant's probation and ordering her to serve her sentence. We agree with the State.

During oral argument, the State acknowledged that the surveillance recordings do not corroborate Officer McCullar's testimony that Defendant was seen going through the female victim's wallet after the man in the blue shirt took it from the female victim by force. Both parties argued that this court should apply a de novo standard of review with no presumption of correctness to the trial court's factual findings because the entirety of Defendant's violation was captured by the surveillance videos. *See State v. Binette,* 33 S.W.3d 215, 217 (Tenn. 2000) ("when a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw their own conclusions"). Under the unique circumstances of this case, this court agrees that the surveillance videos should be reviewed de novo. The officer who testified at the revocation hearing had not witnessed the robbery. He narrated what was captured on the videos. The nature of the evidence presented in the surveillance videos did not hinge on an evaluation of credibility. While we agree that the videos should be reviewed de novo, we will review the revocation of Defendant's probation for abuse of discretion. *See State v. Farrar,* 355 S.W.3d 582, 584-85 (Tenn. Crim. App. 2011) (on remand for reconsideration in light of *State v. Mitchell,* 343 S.W.3d 381 (Tenn. 2011).

In general, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). In probation revocation cases, the trial court abuses its discretion when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The probation violation does not have to be proven beyond a reasonable doubt. *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Id.* (quoting *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991); *see also Farrar,* 355 S.W.3d at 585.

In this case, there is substantial evidence in the surveillance videos to support the trial court's determination that Defendant violated her probation. To be clear, the State was not required to present evidence establishing all elements of the charged offense of robbery beyond a reasonable doubt, but to prove by a preponderance of the evidence that Defendant violated the law based upon the acts alleged in the warrant. *Leach,* 914 S.W.2d at 106; *Harkins*, 811 S.W.2d at 82. The second violation warrant alleged that Defendant was arrested and charged with robbery *and* engaged in conduct that was "assaultive, abusive, threatening, *or* intimidating." Because the surveillance videos show that

Defendant engaged in conduct that was threatening or intimidating, we affirm the trial court's decision to revoke probation.

As seen on the videos, Defendant exited the Eclipse three times at pivotal points during the episode to support her fellow passengers. First, she advanced on the male victim before being stopped by the female victim. Next, she quickly exited the vehicle and jogged deliberately and purposefully in the direction of where blue shirt man was restraining the male victim. Finally, when blue shirt man wrestled the female victim's wallet away from her, Defendant immediately jumped out of the Eclipse for the third time to confront the female victim and deter her from retrieving her wallet.

Defendant refers to her second exit from the vehicle as evidence that she tried to defuse the situation. The evidence belies her claim as a peacemaker. The surveillance footage shows that it was the female victim who again successfully quelled the conflict and prevented the male victim from being physically harmed. Even if Defendant may have helped the male victim get away from blue shirt man in the previous incident, her subsequent behavior toward the female victim constituted intimidating conduct in violation of Rule 14 of the rules of probation. By doing so, Defendant intimidated the victim and shielded the robber from any further attempt by the female victim to retrieve her wallet. And as the trial court otherwise correctly found, Defendant got into the Eclipse and left "immediately with those individuals with the wallet." Defendant was not a mere bystander. She exited the car each time in solidarity with her fellow passengers against the victims. Unlike the female victim, Defendant's behavior in no way defused the situation.

While the surveillance recordings do not show Defendant going through the wallet, the same recordings do show that she was a willing passenger as her three confederates quickly drove away knowing that the man in the blue shirt had robbed the victim of her wallet. The evidence demonstrates that Defendant violated her probation by engaging in intimidating behavior in violation of Rule 14. *See State v. Blake O. Swann*, No. E2018-00354-CCA-R3-CD, 2019 WL 5858163, at *1-*2 (Tenn. Crim. App., at Knoxville, Nov. 8, 2019) (revocation affirmed based solely on intimidating or threatening behavior where the defendant referred to probation officer in derogatory terms and stated that he was "going to win," "good luck," and "no one will stop me" in two emails) *application voluntarily dismissed* (Tenn. Jan. 2, 2020); *State v. Tosha Marie Silcox*, No. E2018-02206-CCA-R3-CD, 2019 WL 3969903, at *3 (Tenn. Crim. App., at Knoxville, Aug. 22, 2019) (revocation affirmed based on abusive behavior where the defendant became aggressive and called probation officer derogatory names during a drug screening) *no perm app filed*. We conclude that the trial court exercised a conscientious judgment and did not act arbitrarily in revoking Defendant's probation.

Furthermore, the fact that Defendant was not later charged with robbery in connection to the incident at the Shell station is not dispositive in determining whether evidence exists of a violation. Three days before she filed her principal brief, Defendant

filed a motion under Tenn. R. App. P. 14(a) for this court to consider as a post-judgment fact the Madison County Grand Jury's decision not to indict Defendant for the offense of robbery, evidenced by its January 4, 2021, no bill of indictment list, or alternatively, to take judicial notice of same under Tenn. R. App. P. 13(c) and Tenn. R. Evid. 201(b)(2). At the time of the probation violation hearing on August 17, 2020, Defendant's status regarding the robbery was unknown. The State ultimately took no position on the motion and neither party addressed the motion at oral argument except that defense counsel mentioned that Defendant was not charged with robbery in the case.

Rule 14(a) empowers this court to consider certain facts that "occur[] after judgment," are "capable of ready demonstration[,]" and "affect[ ] the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters." Facts which are merely cumulative, could be contested when presented to the trial court, and which might lead to differing opinions or conclusions are inappropriate for consideration under Rule 14. The purpose of Rule 14 is not to permit "a retrial in the appellate court." Tenn. R. App. P. 14, Advisory Commission Comments. A judicially noticed fact is a fact not subject to reasonable dispute because it is (1) generally known within the jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Tenn. R. Evid. 201(b). Courts may take judicial notice at any stage of a proceeding. *State v. Lawson,* 291 S.W.3d 864, 869 (Tenn. 2009). The purpose of judicial notice is a matter of convenience to avoid requiring proof of a "well-known and indisputable fact." *Id.* at 868 (quoting *Black's Law Dictionary* 863-64 (8th ed. 2004)).

While the no bill of indictment list occurred after the judgment of revocation and is capable of ready determination, the fact that the grand jury chose not to indict Defendant does not affect our analysis. In probation revocation cases, discretion is abused when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *Delp*, 614 S.W.2d at 398. Our focus is therefore on the evidence as it was presented at the revocation hearing, which the parties agreed should be the focus of our attention.

This court has held that a dismissal of charges which gave rise to the probation violation or a no true bill to indict does not constitute an abuse of discretion where the evidence demonstrates a violation by a preponderance of the evidence. *See State v. John Winston McMurry*, No. M2001-03117-CCA-R3-CD, 2003 WL 1339354, at *1 (Tenn. Crim. App., at Nashville, Mar. 19, 2003) (probation revocation affirmed for violating rule prohibiting possession of firearms and arrest for unlawful possession of a handgun by a convicted felon where Grand Jury returned a no true bill after the defendant's probation was revoked) *no perm. app. filed*; *State v. Terry Sherrod*, No. M2016-01112-CCA-R3-CD, 2017 WL 696844, at *3-*4 (Tenn. Crim. App., at Nashville, Feb. 22, 2017) (probation revocation affirmed for new arrest on charges of aggravated assault and public intoxication,

for using an intoxicant, and engaging in assaultive behavior although Grand Jury entered a no true bill for aggravated assault and the public intoxication charge was dismissed before revocation hearing), *perm. app. denied* (Tenn. May 18, 2017); *State v. James Howard Theus, III*, No. W2005-02426-CCA-R3-CD, 2006 WL 2818241, at *1, n.1 (Tenn. Crim. App., at Jackson, Oct. 2, 2006) (the grand jury's failure to return an indictment for contributing to delinquency of a minor did not affect the trial court's probation revocation decision where trial court heard and accredited the witnesses' testimony), *perm. app. denied* (Tenn. Jan. 8, 2007).

Moreover, this court has held that a trial court may premise a revocation upon proven allegations of a violation warrant, even if the charges have been dismissed. *See State v. Joseph Anthony Gonzales*, No. M2011-02562-CCA-R3-CD, 2012 WL 6163178, at *5 (Tenn. Crim. App., at Nashville, Dec. 11, 2012) (revocation affirmed where the underlying charges which served as a basis for the decision to revoke had been dismissed), *perm. app. denied* (Tenn. Mar. 5, 2013); *State v. Agee Gabriel*, No. M2002-01605-CCA-R3-CD, 2004 WL 1562551, at *2 (Tenn. Crim. App., at Nashville, July 12, 2004) (holding that "validity of the original warrant was not affected by the dismissal of the criminal charges arising from the acts alleged in the warrant") *no perm. app. filed*; *State v. Larry D. Turnley*, No. 01 C01-9403-CR-00094, 1994 WL 714227, at *3 (Tenn. Crim. App., at Nashville, Dec. 22, 1994) ("[t]he fact that the Defendant was not convicted of any of the offenses with which he was charged does not mandate dismissal of the probation violation warrant") *no perm. app. filed*; *State v. Delp*, 614 S.W.2d 395, 396-97 (Tenn. Crim. App. 1980) (revocation may be based upon criminal acts alleged in violation warrant even though defendant was acquitted of charges for underlying acts).

Although the robbery arrest prompted the amended violation warrant and the basis for the revocation, the fact that Defendant was not indicted has no impact on the trial court's finding of a violation given the surveillance footage of her aggressive and intimidating behavior. *See State v. Reid,* 213 S.W.3d 792, 812-13 (Tenn. 2006) (motion for post-judgment facts denied in capital case where State's concession in unrelated federal court hearing that defendant was not competent to waive his appeals federal trial had "little, if any, bearing" on issue of defendant's competence to stand trial on direct appeal and would have no impact on trial court's finding of competence at trial). The motion to consider post-judgment facts is therefore denied. We find the existence of a violation to be supported by a preponderance of the evidence. Defendant's motion to take judicial notice of the no bill indictment is pretermitted by the decision to deny the Rule 14 motion.

### Incarceration as a Consequence of Revocation

Defendant argues in the alternative, that if the evidence supported a violation, the trial court abused its discretion in ordering her to serve the original sentence in confinement because incarceration was "a wildly disproportionate sanction for … being in the wrong place, at the wrong time, with the wrong people." She contends that the trial court based

its decision to serve her sentence on an erroneous assessment of the evidence, namely, that she took possession of the victim's wallet. We again agree with the State that the trial court properly ordered commencement of the judgment as originally entered because there was substantial evidence to support a violation.

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right ... to revoke the probation." T.C.A. § 40-35-311(e)(1). Upon revocation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310.

Defendant insists that the trial court's decision to revoke and impose confinement was based exclusively on its finding that she was seen taking possession of the victim's wallet. That is inaccurate. The trial court also based its decision on Defendant's prior history of violations which was not detailed in the record, but was not disputed by defense counsel:

| The Court: | State asking for revocation? |
|---|---|
| The State: | Yes, sir. And I would note, Your Honor, that this is either the second or third time that we've been here for [Defendant]. She was initially put on probation. She was revoked and reinstated in order to complete the Day Reporting Center, and now we're back. |
| The Court: | [Defense counsel], any comment on disposition? |
| Defense counsel: | No, Your Honor. |
| The Court: | The Court finds based upon her entire record I've considered at this time, that she's had prior opportunities to do things right and she continues to violate. She's no longer a proper candidate to continue on probation. She'll be revoked to serve her original sentence. |

As noted by the State, Defendant has acquiesced in the State's commentary about her probation supervision history by failing to object. Defendant did not address this part of the trial court's conclusion in its reply brief although it was squarely raised by the State in its brief and at oral argument. Defendant's previous violations of probation were not disputed or challenged. While probation may not be revoked for criminal acts known at

- 9 -

the time probation was originally granted, the trial court may review a defendant's past criminal history in order to determine, based on a totality of the circumstances, "whether the beneficial aspects of probation [are] being served" and whether the defendant is amenable to continued probation. *State v. Marcus Nigel Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *5 (Tenn. Crim. App., at Knoxville, Oct. 23, 2008) *no perm. app. filed.*

Given Defendant's repeated failure to abide by the terms of probation, her claim for split confinement or extension of the sentence lacks merit. This court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999) *no perm. app. filed*; *see also State v. Damarcus C. Nelson*, No. W2018-00951-CCA-R3-CD, 2019 WL 2635612, at *8 (Tenn. Crim. App., at Jackson, June 26, 2019) (trial court properly revoked probation and ordered defendant to serve balance of sentence in confinement instead of imposing sanctions or ordering partial revocation for admitted technical violations of probation and posting images indicative of criminal gang membership on Facebook) *no perm. app. filed*.

Because there was sufficient evidence that Defendant violated her probation, the trial court, pursuant to its discretionary authority, properly revoked her probation and ordered her to serve her six-year sentence in confinement.

_____

JILL BARTEE AYERS, JUDGE